**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| JESSICA SECKMAN, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:25-cv-01220-MSN-LRV |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF FAIRFAX, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Plaintiff, by and through undersigned counsel, hereby submits her opposition to Defendant's Motion to Dismiss.

## INTRODUCTION

This case concerns assertions by Plaintiff of disability discrimination, failure to accommodate, retaliation (including a retaliatory hostile work environment), and violations of the FMLA, with state-law counterparts under the VHRA.

This motion in opposition comes before this Court in response to Defendant's Motion to Dismiss Plaintiff's well plead complaint. At a Rule 12(b)(6) stage, the Court accepts all well-pled facts as true and draws reasonable inferences in Plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Measured against this standard and the Complaint's detailed chronology (*see* Compl. ¶¶ 20–27, 30–71, 74–90, 93–123, 126–167), the County's arguments fail. Its exhaustion and timeliness defenses overread the EEOC charge and misapply the continuing-violation doctrine; its merits arguments disregard well-plead

1

facts plausibly showing a breakdown in the ADA interactive process, retaliatory animus bridging any temporal gap, and prejudice under the FMLA. The Motion should be denied in its entirety, or at minimum denied as to core claims and leave granted to amend any count the Court deems deficient.

## FACTUAL BACKGROUND

Plaintiff was employed by Defendant as Social Services Specialist II from Oct. 15, 2018 to Apr. 22, 2025. (Compl. ¶¶7–8). Plaintiff is a qualified individual with disabilities under the ADA and Defendant was on notice regarding the Plaintiff's disabilities. (Compl. ¶¶9–10, 20–21). Telework was recommended by Plaintiff's physician during the COVID-19 pandemic. Eventually the entire staff was moved remote in 2020. Based on Plaintiff's condition, her physician recommended continuation into 2021 during which time Plaintiff was highly productive. (Compl. ¶¶22–25). On one prior occasion at a December 2022 holiday party, a former supervisor Ms. Lorrie Joseph (hereinafter "Ms. Joseph"), expressed doubt regarding the need for Plaintiff's teleworking despite it being a disability accommodation. After this, Ms. Joseph was reassigned to directly supervise Plaintiff again and was hostile to Plaintiff regarding the telework/accommodations including stating that Plaintiff's condition was not "a real" disability during a teleconference call. Also, sometime in early Jan. 2023, Ms. Joseph publicly confronted Plaintiff about her medical issues, forcing disclosure. (Compl. ¶¶27, 28–35, 36–40.)

In Early 2023, Plaintiff used intermittent FMLA for weekly medical appointments. Ms. Joseph demanded doctor notes despite existing FMLA approval. HR told Ms. Joseph notes were not required and that they would follow up. (Compl. ¶¶32–34, 41–45.) On or around, Jan. 17, 2023 Plaintiff experienced an emergent medical episode in which Ms. Joseph refused to allow Plaintiff

to take unscheduled FMLA. This lead to HR intervening, and thereafter, Ms. Joseph denying any flex hours/OT/CTE to accommodate Plaintiff's care. (Compl. ¶¶48–53, 64–66.)

Ms. Joseph increased Plaintiff's workload beyond that of her peers and raised her phone-intake obligation from 35% to 50%, which reduced available case-work time while simultaneously increasing her caseload and exacerbating her ADHD symptoms (Compl. ¶¶59–67, 73). On February 22, 2023, Ms. Joseph denied Plaintiff overtime because Plaintiff had used FMLA earlier that day (Compl. ¶¶64–66). Ms. Joseph also denied Plaintiff recognition through the Visions & Values committee because of Plaintiff's FMLA use and accommodations (Compl. ¶68). In addition, the promotion process was tainted by disability-based comments, including that it was "not the best time to promote" Plaintiff due to her health (Compl. ¶¶56–58). On March 7, 2023, Plaintiff filed a grievance alleging retaliation and FMLA interference resulting in Ms. Joseph being required to attend training, and in return Ms. Joseph placed a negative note in Plaintiff's file (Compl. ¶¶70–73).

Plaintiff eventually sought additional accommodations as her physician recommended additional case-processing time, but the County flatly denied that accommodation and thereafter began refusing to approve FMLA paperwork (Compl. ¶¶74–77). From 2023 through 2025, the County demanded duplicative documentation, stalled its responses, refused reassignment to suitable vacancies, and offered only unsuitable positions or demotions in Tax Administration that carried a lower grade and benefits and were not merit positions (Compl. ¶¶79–85, 91–92, 110–114). The County also repeatedly denied or obstructed the intermittent FMLA and schedule flexing Plaintiff needed for treatment, demanded re-submissions, and left requests unanswered (Compl. ¶¶86–90, 96–103).

On or about December 16, 2024, the County reneged on a pre-approved quiet-time accommodation immediately before an interview, Mr. Rey, who sat on the panel, refused to honor Plaintiff's ADA accommodations, and the interview was canceled due to Plaintiff's resulting distress (Compl. ¶¶111–114). On February 7 and 11, 2025, delays in approving Plaintiff's flex and leave requests forced her to cancel medical and physical-therapy appointments, causing financial penalties and exacerbating her symptoms. In March 2025, the County's ambiguity about rescinding accommodations created confusion about her essential functions (Compl. ¶¶101). On March 25, 2025, Plaintiff's treating provider linked her PTSD and worsening mental health to the County's discrimination and failure to accommodate (Compl. ¶106).

On April 7, 2025, the County abruptly placed Plaintiff on administrative leave and proposed medical separation, but it failed to promptly notify staff of her status (Compl. ¶¶115–118). On April 22, 2025, the County terminated Plaintiff's employment; on May 1, 2025, it issued a benefits-termination notice, denied her reinstatement request, and HR refused an appropriate reassignment (Compl. ¶¶120–122). The County also miscalculated leave, delayed donations, and misrepresented the merit status of reassignment options, thereby compounding the harm to Plaintiff (Compl. ¶¶123–126).

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the pleadings and does not resolve contests about the facts or the merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint survives when it alleges facts that, if accepted as true, state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the Court may consider documents integral to and explicitly relied upon in the complaint—such as the EEOC charge and

April 23, 2025 Right-to-Sue letter. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Disputed inferences from those documents must be drawn for Plaintiff at this stage.

## **ARGUMENT**

**I.    Exhaustion: Post-charge retaliation should proceed in Court as "reasonably related" to original EEOC charge.**

The County contends the Court is "bound" by a cramped reading of Plaintiff's August 20, 2024 EEOC Charge and that termination-related facts are therefore out of scope. That is incorrect. The Fourth Circuit instructs that EEOC charges are construed liberally, and a civil action may encompass claims that are "reasonably related to" the charge and would "naturally have arisen from an administrative investigation." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594–95 (4th Cir. 2012). The Complaint alleges disability discrimination, repeated failures to accommodate, retaliatory antagonism, interference with protected leave, and ultimately termination—i.e., a single, continuous course of conduct that the EEOC investigation would naturally probe once presented with Plaintiff's narrative. (Compl. ¶¶ 32–34, 41–53, 56–68, 70–73, 74–85, 86–90, 93–99, 101–106, 110–121.)

Additional controlling principles defeat the County's narrowing approach. In the EDVA post-charge retaliation is deemed exhausted without filing a new charge. The Fourth Circuit has long recognized that a retaliation claim arising after the initial charge—especially retaliation for filing the charge—need not be separately exhausted. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *see Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (stating if a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (quoting *Smith*). Plaintiff filed her charge on August 20, 2024 (Compl. ¶ 78), continued requesting

accommodations and protected leave (¶¶96–103, 110–114), was placed on administrative leave on April 7, 2025 (¶¶115), and was terminated on April 22, 2025 (¶¶120)—all before suit and all in the same protected-activity chain. Under *Nealon*, *Smith*, and *Miles* those acts are actionable here.

Also, Defendant uses of *Balas*, *Evans*, and *Chacko* for the proposition that the complaint cannot exceed the charge. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir.2005); *Balas v. Huntington Ingalls Indus.*, *Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citing *Evans v. Techs. Applications & Serv.* Co., 80 F.3d 954, 962–63 (4th Cir.1996). But those cases involved a mismatch between the factual theories in the complaint and the narrow or materially different allegations actually presented to the agency (e.g., new actors, new bases, or different conduct), not a continuation and culmination of the same retaliation identified in the charge. Here, Plaintiff's EEOC materials charged disability-based discrimination, retaliation, and a hostile work environment, identified the same workplace actors (including her supervisors and HR), and expressly marked the matter as a "Continuing Action," with particulars describing ongoing denial/delay of accommodations, promotion denials tied to disability, and retaliatory treatment that persisted into 2024. That is the factual through-line the Complaint carries forward.

Defendant had knowledge and notice of the original EEOC and the assertions contained within. Then on April 22, 2025 Defendant terminated Plaintiff just one day before she received a notice of her rights to sue on April 23, 2025. This resulted in Plaintiff filing a second EEOC for retaliatory termination after engaging in protected activity, was plainly a foreseeable result, and bringing said retaliation complaint into this proceeding is allowable as it is clearly "reasonably related" to the original EEOC charge especially given the reason for termination was Defendants inability to accommodate leading to the medical separation/termination of Plaintiff.

These facts are worlds apart from those in *Chacko*, where the lawsuit introduced new types of harassment by different supervisors than those named in the charge, and from *Balas/Evans*, where plaintiffs tried to litigate wholly uncharged incidents or theories. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir.2005); *Balas v. Huntington Ingalls Indus.*, *Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citing *Evans v. Techs. Applications & Serv.* Co., 80 F.3d 954, 962–63 (4th Cir.1996). Here, the charge and complaint share the same protected activity (requests, grievances, EEOC filing), the same disability-based animus, the same decisionmakers, and an expressly alleged continuing course that culminated in separation.

Finally, Defendants invoke *Sydnor v. Fairfax County* to emphasize exhaustion; but *Sydnor* actually warns courts not to read it liberally and declines read the exhaustion requirement that strictly. (*Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 597 (4th Cir. 2012)). Plaintiff's charge flagged disability discrimination, failure to accommodate, and retaliation as a continuing course; the Complaint pleads how that course continued into 2025 and ended in separation while the charge was pending. That satisfies *Sydnor's* standard at the pleadings stage. Even if the Court were to entertain Defendants' narrow reading (it shouldn't), the termination still informs motive, pattern, and damages for Plaintiff's exhausted retaliation and hostile-work-environment claims; those claims explicitly continue into 2024–2025 and include administrative leave and accommodation rescission threats within the 300-day window.

## II.   Timeliness: Earlier Acts Are Timely as Part of a Continuing Practice and as Context.

Defendants' 300-day argument (using a November 23, 2023 look-back from the September 18, 2024 charge) cannot defeat Plaintiff's ADA/VHRA claims for three independent reasons.

### A. Plaintiff pleads timely acts within the limitations period, so earlier acts are admissible as background and pattern.

The Complaint alleges multiple adverse and harassing events within and after the charge window—including continuing accommodation obstruction, retaliatory scheduling/assignment decisions, administrative leave in April 2025, and termination on April 22, 2025—well inside the period. *See* Compl. ¶¶ (115,120) and (91,96-103). Because there are timely acts, earlier events remain probative to show motive, intent, and pattern. The Supreme Court is explicit that time-barred acts "may constitute relevant background evidence" in support of timely claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002). The Fourth Circuit applies *Morgan* the same way: even if a discrete act itself is not separately actionable due to age, it can be considered as context for timely claims. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222–23 (4th Cir. 2016) (citing *Morgan* and stating a claim will be considered timely if at least one act continuing the violation occurred within the statutory period).

**B. The hostile-work-environment and retaliatory-harassment theories aggregate conduct so long as one act is timely.**

*Morgan* draws a clear line: while discrete decisions (e.g., a failure to promote) are actionable individually, hostile-work-environment claims are "different in kind" because their "very nature involves repeated conduct." 536 U.S. at 115. Thus, when at least one component act falls within the filing window, the Court may consider the entire course of related harassment to determine liability. *Id.* at 117–18. The Fourth Circuit consistently follows this rule and reads it practically. In *Guessous*, the court allowed a hostile environment claim to proceed based on a multi-year course where the allegations were part of the same pattern that culminated in timely acts. 828 F.3d at 222–23. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277–82 (4th Cir. 2015), underscores that there is no mathematical number of incidents that need to occur within the limitations period to anchor the claim and permit consideration of related earlier conduct but rather

a determination should be made by looking at all of the circumstances which may include the frequency of the conduct.

This Court also follows the continuous nature of acts and may consider all of those (previous) acts, so long as any act contributing to that same hostile work environment occurs within the statutory window. Such a timely-act "anchors" the previous acts. *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 620 (E.D. Va. 2011). *Randall v. Potter*, also concludes similarly where the court explained that a hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice. See *Randall v. Potter*, 366 F.Supp.2d 104 (2005). Provided an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for determining liability .

Defendants' reliance on *Malghan v. Evans*, 118 F. App'x 731 (4th Cir. 2004), is misguided. *Malghan,* rejected an attempt to relabel unrelated, discrete management decisions as "hostile environment" with no timely anchor. Here, by contrast, Plaintiff alleges (1) continuing disability-based and retaliatory harassment/obstruction; (2) timely acts within and after the 300-day window; and (3) the same decisionmakers/HR chain escalating from obstruction to administrative leave and, ultimately, termination. That is exactly the scenario *Morgan*, *Guessous*, and *Edwards* say a court must assess as one unlawful practice.

### C. Defendants' "no link after March 2023" premise misreads the pleading standard and the Complaint.

At Rule 12(b)(6), the Court accepts well-pled facts and reasonable inferences. The Complaint does not present "sporadic" and "conclusory" allegations ending in March 2023; it alleges a continuous course of disability-related obstruction and retaliation that continued into 2024–2025, including specific adverse steps culminating in separation. *See*, e.g., Compl. ¶¶ 91-92,

96–103, 110–114, 115, 120 (timeline continuing through 2024–2025; administrative leave April 2025; termination April 22, 2025). Those are timely acts that anchor the hostile-work-environment/retaliatory-harassment count and allow the Court to consider pre-November 23, 2023 events as part of the same course. *See Morgan*, 536 U.S. at 117–18; *Guessous*, 828 F.3d at 222–23.

III.     **Failure to Accommodate (ADA/RA/VHRA): Plaintiff Plausibly Alleges All Elements.**

Defendants' challenge to Counts I, II, and VIII overreads the pleading burden and misstates the accommodation standards. At Rule 12(b)(6), Plaintiff need only allege facts that, accepted as true, make it plausible that (1) she is disabled; (2) the County had notice; (3) she could perform the essential functions with reasonable accommodation; and (4) the County failed to accommodate. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)); *see also Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414–22 (4th Cir. 2015) (ADA's "reasonable accommodation" includes reassignment, assistive measures, and job restructuring). Plaintiff's allegations comfortably meet—and exceed—this threshold.

A.   **Disability and notice are plausibly alleged.**

Plaintiff pleads qualifying mental-health and neurological conditions (e.g., ADHD, PTSD, anxiety, depression) and a genetic/hematologic condition; she repeatedly notified the County and requested accommodations (telework, extended/adjusted time on tasks, interview-prep and scheduling adjustments, a transfer to a suitable vacancy, and related supports). The Fourth Circuit recognizes that these kinds of conditions can substantially limit major life activities and thus satisfy the broad, post-ADAAA definition. *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329–33 (4th Cir. 2014) (ADAAA broadened "disability" and rejects cramped readings). An employee need not invoke "magic words" but must only make it clear that they want assistance for their disability. *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 167 (4th Cir. 2024); *See also Jacobs v. N.C.*

*Admin. Office of the Courts*, 780 F.3d 562, 581–82 (4th Cir. 2015) (stating that employee's request to be relieved from a customer-facing rotation due to social anxiety adequately triggered the duty to accommodate).

### B. The pleading plausibly shows she could perform essential functions with reasonable accommodation.

Defendants claim Plaintiff never tied her accommodations to the job's essential functions. Not so. She alleges accommodations tailored to the functional limitations (time/organization supports for ADHD; telework/scheduling to manage medical appointments and symptom flare; reassignment to an open role aligned with restrictions), all recognized forms of accommodation. *See* 42 U.S.C. § 12111(9)(B) (reasonable accommodation includes "part-time or modified work schedules" and "reassignment to a vacant position"); 29 C.F.R. § 1630.2(o)(2)(ii). The Fourth Circuit has repeatedly held that accommodations like telework/modified scheduling and reassignment are viable and may be required absent undue hardship. *Reyazuddin*, 789 F.3d at 414–22 (reassignment of duties was a reasonable accommodation). Whether a particular measure enables performance is a fact question, ill-suited to Rule 12 dismissal. *See Reyazuddin*, 789 F.3d at 418–22 (reversing defense judgment; reasonableness and "qualified" status with accommodation belonged to the jury).

Defendants' reliance on *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538 (W.D. Va. 2023), doesn't carry at this stage. *Wood* turned on a plaintiff who did not say how his impairments affected job tasks or how his requested changes would help. Here, by contrast, Plaintiff links limitations to concrete accommodations that would allow her to meet output and scheduling demands (additional time, predictable scheduling, telework, and transfer to a vacant role)—exactly the link *Wilson* and *Rhoads* require to plead plausibility.

Nor does it matter that Plaintiff at times performed well or received accolades. A "Herculean-effort" stretch without needed supports does not negate entitlement to accommodation; the law asks whether she could perform the essential functions with reasonable accommodation on an equal basis—not whether she sometimes managed despite the barrier. *See Merrill v. McCarthy*, 184 F. Supp. 3d 221, 238 (E.D.N.C. 2016) (stating that performing work without any accommodation does not in and of itself disqualify one from ever requesting or receiving an accommodation). Other courts and circuits have acknowledged similarly that an employee that meets expectations is still entitled to accommodation of duties. *See Hopman v. Union Pacific Railroad*, 462 F.Supp.3d 913, 925-927 (2020).

### C. The Complaint plausibly alleges the County refused reasonable accommodations and failed to engage in the interactive process.

Once on notice, the employer must engage in a good-faith interactive process to identify and implement an effective accommodation. *Haneke v. Mid-Atl. Cap. Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005); 29 C.F.R. § 1630.2(o)(3). The court in this case stated: "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation. 29 C.F.R. § 1630.2(o)(3)." Plaintiff alleges the County did the opposite: it delayed, rescinded, or ignored supports (e.g., time and scheduling adjustments; interview-prep assistance; telework flexibility); it refused reassignment to a suitable vacancy; and it escalated its deleterious actions up to placing Plaintiff on administrative leave, and ultimately termination, instead of problem-solving. Those facts plausibly plead refusal. *See Reyazuddin*, 789 F.3d at 418–19 (evidence that employer refused to provide effective accommodation or reassignment created triable failure-to-accommodate claim).

Defendants invoke a "sole cause" standard (citing *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240 (D. Md. 2023)), but that argument conflates disparate treatment causation with

failure-to-accommodate liability. Under § 504, "failure to reasonably accommodate is itself discrimination," and the Fourth Circuit analyzes RA accommodation claims coextensively with the ADA. *Reyazuddin*, 789 F.3d at 414–22 (applying the same elements and reversing judgment on RA/ADA accommodation claim). Whether Plaintiff was denied benefits or an accommodation for any reason is a fact question inappropriate for Rule 12(b)(6). For example, *Feldman v. Law Enforcement Associates Corp.*, the court emphasized that issues concerning the reasonableness of a requested accommodation are questions of fact that are more appropriately resolved at the summary judgment stage or trial, not on a Rule 12(b)(6) motion. *Feldman v. L. Enf't Assocs. Corp.*, 779 F. Supp. 2d 472, 487 (E.D.N.C. 2011)

Courts have repeatedly recognized that ADA claims, particularly those involving failure to accommodate, require a fact-specific analysis. In National Federation of the *Blind*, *Inc.* v. *Lamone*, the court noted that the reasonableness of a proposed policy modification is typically a fact-specific inquiry, and only in rare cases where the accommodation is facially unreasonable can it be dismissed as a matter of law. *Nat'l Fed'n of the Blind*, *Inc.* v. *Lamone*, 438 F. Supp. 3d 510, 529 (D. Md. 2020). Plaintiff plausibly alleges that but for the County's refusal to provide the requested accommodations, she could have performed the essential functions and remained employed; that is enough now. Plaintiff's request for transfer to a suitable vacancy is a textbook accommodation. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii). The Fourth Circuit has repeatedly treated reassignment as a reasonable accommodation to be considered in good faith and implemented where effective and not unduly burdensome. *Reyazuddin*, 789 F.3d at 420–22 (discussing reassignment at length). While an employer need not violate a neutral best-qualified policy when considering a reassignment, this does not allow an employer to refuse to consider reassignment or to stonewall the interactive process. *See Elledge v. Lowe's Home Ctrs.*, LLC, 979 F.3d 1004,

1017–20 (4th Cir. 2020)). Plaintiff's allegations are that the County did exactly that—foreclosing reassignment outright—which states a claim.

## IV. Retaliation (ADA/RA/VHRA): Protected Activity, Adverse Actions, and Causation Are Plausibly Alleged.

Plaintiff likewise satisfies the pleading standard to state claims of retaliation under the ADA, RA, and VHRA. Under the ADA, to establish a retaliation claim, a plaintiff must allege "1) that she has engaged in conduct protected by the ADA; 2) that she suffered an adverse action subsequent to engaging in the protected conduct; and 3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health*, *Inc*., 313 F.3d 205, 216 (4th Cir.2002). To begin with, while Defendant relies on *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373 to state Plaintiff's burden to establish a prima facie case, *see* Def. Mot. at 11-12, the Fourth Circuit has made clear that while a complaint must allege facts sufficient to state the elements of a claim, "a plaintiff need not plead 'specific facts establishing a prima facie case'" at the dismissal stage. *Jones v. HCA*, 16 F. Supp. 3d 622, 629 (E.D. Va. 2014) (citing *Bass v. E.I. DuPont de Nemours* & *Co*., 324 F.3d 761, 765 (4th Cir.2003)). *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373*,* and *Brockman v. Snow,* 217 F. App'x 201 (4th Cir. 2007) concern litigation at the summary judgment stage with a higher threshold to clear than the present dismissal stage. Plaintiff nevertheless states facts to support all three elements of a retaliation claim under these statutes.

### A. Plaintiff engaged in protected activity.

Defendant does not dispute that Plaintiff engaged in a protected activity when she requested an ADA accommodation starting in July of 2022, filed internal grievances regarding harassment of discrimination beginning in March 2023, and filed an EEOC Complaint in August 2024. These

activities are readily understood as protected by the ADA. *See*, e.g., *A Society Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011).

### B. Plaintiff suffered materially adverse actions.

"[W]hether Plaintiff[] suffered an adverse action is likewise a straightforward inquiry." *Jones v. Bd. of Educ. of Putnam Cnty.*, *W. Virginia*, 432 F. Supp. 3d 635, 644 (S.D.W. Va. 2020). Plaintiff describes at length the materially adverse actions Ms. Joseph took after Plaintiff first reported her misconduct to HR, despite Defendant's attempt to misrepresent the full scope of her retaliatory actions. Plaintiff alleges not only that Defendant retaliated against her by escalating workplace harassment, but that Defendant also intentionally sabotaged her promotion opportunities (while providing specific dates for these events), *see* Compl. ¶¶ 56-57, improperly handled her leave requests, *id.* ¶ 43, and ultimately terminated her employment on April 22, 2025, *id.* ¶ 120. More specifically, Plaintiff alleges that after she reported Ms. Joseph to HR in January 2023, Compl. ¶ 44, Ms. Joseph tried to restrict Plaintiff's ability to take FMLA, id. ¶ 48. Then, after Plaintiff reported that misconduct again to HR, Ms. Joseph began denying flex leave, the ability to work overtime, or use compensatory time to accommodate her appointments. ¶¶ 50-51.

For the reasons already stated above, Plaintiff's allegations are not untimely or outside the scope of Plaintiff's EEOC charge because all claims of retaliation following the filing of her EEOC charge relate back to that administrative complaint. *See infra* § I; *see also Jones v. HCA*, 16 F. Supp. 3d 622, 633 (E.D. Va. 2014) (applying "relation-back" doctrine to ADA claim alleging multiple instances of retaliation occurring between June 13, 2012, filing of EEOC charge and August 2, 2013 receipt of right-to-sue letter). And, because Plaintiff asserts timely acts within and after the EEOC charge period, prior instances of discrimination and retaliation may nevertheless be considered as pertinent context for the timely claims. *See infra* §II(A)-(B).

**C. Plaintiff asserts sufficient facts to show a causal connection between these actions.**

Lastly, her protected activity was causally connected to her employer's adverse actions. "Little is required to plead causation." *Jones v. HCA*, 16 F. Supp. 3d 622, 634–35 (E.D. Va. 2014) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir.1998)). Alleging temporal proximity, though not conclusive, is often sufficient to plausibly allege a causal connection. *Id.* (citing *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 551 (4th Cir.2006)); *see also Jones v. Bd. of Educ. of Putnam Cnty., W. Virginia*, 432 F. Supp. 3d 635, 645 (S.D.W. Va. 2020).

Defendant's contention that Plaintiff failed to plead facts showing that Defendant took a materially adverse action against her following her August 2024 EEOC charge is patently false. To the contrary, Plaintiff plainly states that between August 2024 and March 2025, Defendant consistently obstructed her efforts to obtain donated leave, extraordinary sick leave, and reassignment to open roles suitable for her medical condition. Compl. ¶¶ 91-92. She goes on to detail specific examples of these dilatory and obstructive efforts, citing events occurring in September 2024, in December 2024, on February 7 and 11, 2025, in March 2025, and on April 7, 2025. Compl. ¶¶ 93-111. There was thus no "ten-week separation" between events that would weaken a finding of causation. *See* Def. Mot. 12 (citing *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (citation omitted). Instead, there is precisely the "continuing retaliatory conduct and animus" between her EEOC charge and her termination that was contemplated by the Fourth Circuit. *See id. Perry*, 489 F. App'x at 637 (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). As such, Plaintiff has alleged facts to clear this low threshold, and her retaliatory claims survive dismissal.

**V.    Retaliatory Hostile Work Environment (ADA): The Totality Alleges Severe or Pervasive Harassment Tied to Protected Acts.**

To establish an ADA-hostile work environment claim, a plaintiff must show that: "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 367 (4th Cir. 2022). In considering the objective component of a hostile work environment claim, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nyarko v. DaVita Kidney Care*, No. CV DLB-22-1141, 2023 WL 2758843, at *10 (D. Md. Mar. 31, 2023), *aff'd*, No. 23-2198, 2024 WL 4144396 (4th Cir. Sept. 11, 2024) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Defendant incorrectly argues that Plaintif's allegations fail to rise to the requisite "severe and pervasive" level to survive dismissal. In so doing, Defendant dismisses Ms. Joseph's harassing comments as "nothing more than an offensive utterance" while ignoring their humiliating nature, the animus those comments reveal, and the consistent retaliation campaign that accompanied them. First, Plaintiff identifies multiple harassing and disparaging statements made by Ms. Joseph or others related to her disability, including instances where coworkers comforted Plaintiff in response. *See, e.g.,* Compl. ¶¶ 30, 35, 36, 43, 57, 61, 63. On one such occasion, Ms. Joseph belabored her questioning regarding Plaintiff's telework in front of coworkers to the point at which Plaintiff was forced to reveal her medical conditions. *Id.* ¶ 38.

Moreover, Plaintiff does in fact allege that Defendant interfered with her ability to execute her duties. She identifies an occasion in which Ms. Joseph went into Plaintiff's case files to write notes and take actions that effectively jumbled them, exacerbating her ADHD systems and creating

additional work for Plaintiff to complete. *Id.* ¶ 46-47. Plaintiff identifies instances in which Ms. Joseph assigned her more work than her peers and deliberately assigned tasks to be completed while Plaintiff was taking FMLA leave, *id.* ¶ 59, and increased her case load and phone shifts, *id.* ¶ ¶66-67. And contrary to Defendant's assertion, Plaintiff identifies multiple instances in which she was denied FMLA leave, overtime, accommodations, and flex leave as a result of Defendant's animus towards her disability. Further, while Plaintiff was recognized for her work performance during her employment, she was nominated for an award in 2022 before she again came under the supervision of Ms. Joseph. *See* Compl. ¶¶ 26-29. When Plaintiff was selected to be on a department committee in March 2023 that was considered to an honor and accolade, Ms. Joseph denied Plaintiff the opportunity. *Id.* ¶ 68.

To reiterate, the pleading requirement at this stage draws inferences in favor of Plaintiff. *See, e.g. Jones v. HCA*, 16 F. Supp. 3d 622, 629–30 (E.D. Va. 2014) (accepting plaintiff's allegations that work environment was "negative" and unwelcome). Plaintiff satisfies all pleading requirements for her retaliatory hostile work environment claim.

## VI.    FMLA Interference: Plaintiff Pleads Entitlement, Interference, and Prejudice.

Defendants attack Count VI by asserting that Plaintiff (1) fails to allege "interference," and (2) pleads no "harm." Both points misread the Complaint and the governing standard. An FMLA-interference claim requires only that Plaintiff plausibly allege: (1) she was entitled to an FMLA benefit; (2) the employer interfered with that benefit; and (3) the interference caused prejudice. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 89 (2002)). Plaintiff does so.

### A.  Elements of test under *Adams* are met.

1)      Plaintiff asserts she was FMLA-eligible and approved for intermittent leave for serious health conditions; Fairfax is a covered employer; and management knew of her medically supported need for intermittent time off. (Compl. ¶¶ 32, 41–45, 55–57, 86–89, 95–99, 107–110, 115–117, 123–126, 154–159.) Those allegations satisfy element one. *See Adams*, 789 F.3d at 427–28. Defendants do not dispute eligibility. *See* Dok #10.

2)      The statute and regulations prohibit "interfer[ing] with, restrain[ing], or deny[ing]" FMLA rights, including by discouraging use, demanding unnecessary documentation, manipulating schedules, or otherwise impeding leave. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(b)–(c). Plaintiff alleges, among other things:

a. Improper documentation demands after approval: After her intermittent FMLA was already approved, her supervisor demanded a doctor's note laying out a schedule of appointments; HR confirmed such a demand was improper and said it would address procedures with the supervisor. (¶¶ 41–45.)

b. Denials and manipulation of intermittent leave/flex time: She was told she "could not take unscheduled FMLA," denied flex time, and restricted from overtime/CTE needed to accommodate care—impediments that undermined approved intermittent leave. (¶¶ 48–53, 65–67, 86–89, 96–100, 123–125.)

c. Non-responses and miscalculations that forced cancellations and delayed care: In February 2025 she had to cancel medical and physical-therapy appointments because the County failed to respond; she also pleads miscalculated balances and delayed processing of leave donations. (¶¶ 96–100, 123–125.)

d. Administrative-leave placement mid-use: On April 7, 2025, she was abruptly placed on administrative leave and proposed for medical separation while she was

actively trying to use FMLA and non-FMLA leave, impairing scheduling/restoration rights. (¶¶ 115–117.)

These allegations fit squarely within interference as *Adams* describes it and as the regulation defines it (discouragement, denial, and manipulation). *See Twine v. AT&T, Inc., 755 F. Supp. 3d 959, 983 (E.D. Va. 2024)* (finding interference where discouragement of use of FMLA is alleged). Other courts have held similar ideas. *See also Shtab v. Greate Bay Hotel & Casino, Inc.,* 173 F. Supp. 2d 255, 267 (D.N.J. 2001) (holding suggestions to use alternative dates can constitute interference)

Defendants' assertion that "she got leave anyway" misstates the law. Interference does not require a wholesale denial of twelve weeks; it includes conduct that discourages, restrains, or impedes exercising approved intermittent leave. 29 C.F.R. § 825.220(b)–(c); *Adams*, 789 F.3d at 427–29.

3)    *Ragsdale* also requires prejudice, i.e., harm caused by the interference; *Adams* confirms that prejudice encompasses monetary losses, lost leave protections, delayed medical care, and other tangible harms the employee would not have suffered but for the employer's interference. *Adams*, 789 F.3d at 427–29 (citing *Ragsdale*, 535 U.S. at 89–91). Plaintiff pleads exactly that: she incurred penalties for canceled appointments; her access to care was delayed; her health worsened; and she suffered financial and job-protection harms tied to denials, delays, miscalculations, and the April 7, 2025 leave/separation maneuver while she was actively using leave. (¶¶ 96–101, 106, 115–117, 123–126.) That is more than enough at a Rule 12 stage.

**VII.    FMLA Retaliation: The Complaint Plausibly Alleges a Causal Nexus.**

Defendant applies the McDonnell Douglas framework (as it must), but its causation attack ignores what Rule 12(b)(6) requires and what the Complaint actually pleads. To state a prima facie

FMLA-retaliation claim, Plaintiff need only plausibly allege (1) protected activity; (2) adverse action; and (3) a causal connection. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550–51 (4th Cir. 2006) (borrowing Title VII's framework).

Plaintiff repeatedly invoked and used intermittent FMLA (2019–2025) and was terminated on April 22, 2025. (Compl. ¶¶ 32, 41–45, 86–90, 96–100, 115–21, 154–61.) Those facts satisfy elements (1) and (2).

Causation may be shown by "very close" temporal proximity or by a "continuing retaliatory conduct and animus" bridging the time between protected activity and adverse action. *See Perry v. Kappos*, 489 F. Appx 637, 643 (4th Cir. 2012); *Lettieri v. Equant Inc.,* 478 F.3d 640, 642 (4th Cir. 2007). Plaintiff pleads both:

1) Proximity: Plaintiff was actively invoking and attempting to use intermittent FMLA into February 2025, when non-responses forced cancellation of medical and physical-therapy appointments (¶¶ 96–100); on April 7, 2025 she was placed on administrative leave while actively using FMLA (¶115); she was terminated two weeks later on April 22, 2025 (¶120). That is far closer in time than cases finding proximity inadequate. *See Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (temporal proximity may establish causation at prima facie stage); see also *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018) (temporal proximity measured from the employer's knowledge and can be "very close" when adverse action follows soon after protected conduct).

2) Pattern and intervening antagonism: From early 2023 forward, supervisors and HR repeatedly (a) denied or manipulated FMLA/flex requests (¶¶ 48–53, 86–90), (b) demanded unnecessary medical documentation even after approval (¶¶ 41–45, 88–90),

(c) penalized her use of FMLA (denying overtime because she had taken FMLA earlier that day, ¶65; telling her she could not take "unscheduled FMLA," ¶48), (d) increased workload and phone-intake shifts in ways that made her FMLA usage more difficult (¶¶ 59, 66–67), and (e) placed her on administrative leave while she was using FMLA (¶115). This is classic "continuing retaliatory conduct and animus" bridging any gap, squarely within *Lettieri*, 478 F.3d at 650.

Defendant's reliance on *Perry* is misplaced. *Perry v. Kappos*, 489 F. App'x 637, cautions that when temporal proximity alone is weak, plaintiffs may establish causation with "other relevant evidence," such as continuing retaliatory conduct and animus. 489 F. Appx at 643 (quoting *Lettieri v. Equant Inc.,* 478 F.3d 640, 650 (4th Cir. 2007)). That is precisely what is alleged here—and the proximity is not weak but rather strong. *See Foster*, 787 F.3d at 253 (close timing is probative at the prima facie stage).

*Yashenko* does not help Defendant either. *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, affirms the framework but turned on a record at summary judgment where the employer provided legitimate reasons and no causal link was shown. 446 F.3d at 551–53. By contrast, at the pleading stage, Plaintiff need only allege facts supporting a plausible inference of causation—which she does through (i) near-immediate adverse actions following active FMLA use and (ii) a multi-year pattern of FMLA-related hostility culminating in termination. (¶¶ 41–45, 48–53, 59, 65–67, 86–90, 96–100, 115–121, 154–61.)

Finally, Fourth Circuit cases recognize that actions tied to leave usage—such as disciplining for using leave, manipulating schedules to penalize leave, or taking adverse action soon after returning/using leave—support an inference of retaliatory motive. *See Snelling v. Clarian Health Partners, Inc.,* 184 F.Supp.2d 838 (2002).

**CONCLUSION**

For the foregoing reasons, the Court should deny the motion in full. Alternatively, to the extent the Court finds any pleading deficiency, Plaintiff respectfully requests leave to amend the Complaint pursuant to Rule 15 of the Federal Rule of Civil Procedure.

Respectfully submitted,

/s/ *Thomas J. Curcio*
Thomas J. Curcio (VSB #23016)
CURCIO LAW
700 North Fairfax Street, Suite 505
Alexandria, Virginia 22314
Telephone: (703) 836-3366
Facsimile: (703) 836-3360
Email: tcurcio@curciolaw.com

s/ Raymond Gordineer
Pamela M. Keith (*Pro Hac*)
Raymond K. Gordineer Jr. (*Pro Hac*)
Center For Employment Justice, LLC
650 Massachusetts Ave. NW
Suite 600
818-800-0292
pamkeith@centerforemploymentjustice.com
raygordineer@centerforemploymentjustice.com
***Attorneys for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing Plaintiff's Memorandum In Opposition To Defendant's Rule 12(B)(6) Motion To Dismiss, along with the proposed order, was served via electronic filing through the Court's CM/ECF system upon all counsel of record:

Christina M. Hamilton
Assistant County Attorney
12000 Government Center Parkway
Suite 549
Fairfax, Virginia 22035
Phone: (703) 324-2421
Christina.Hamilton@fairfaxcounty.gov

/s/*Raymond Gordineer*
Raymond Gordineer